United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> MELISSA JAMES, JOHN A. JAMES II, COLEMAN C. JAMES and C.W.J., a minor, <br><br> Defendants. | No. C-14-04242 DMR <br><br> **ORDER DENYING PLAINTIFF'S MOTION TO STRIKE PORTIONS OF DEFENDANTS' COUNTERCLAIM [DOCKET NO. 49]** |

Plaintiff American General Life Insurance Company ("AGLIC") moves the court pursuant to Federal Rule of Civil Procedure 12(f) to strike portions of Defendants and Counter-Plaintiffs John A. James II ("John James"), Coleman C. James ("Coleman James"), and C.W.J.'s[1] (hereinafter "Defendants"[2]) Counterclaim. Having reviewed the relevant legal authority, and the papers and arguments of the parties, the court DENIES AGLIC's motion to strike for the reasons set forth below.

---

[1] Although AGLIC disclosed C.W.J's name in its Complaint for Interpleader, the court is identifying only the minor's initials in this filing in accordance with Federal Rule of Civil Procedure 5.2(a).

[2] Melissa James is also a defendant but she is not involved in this motion. As used in this order, the term "Defendants" does not include Melissa James.

**I. Background**

**A.     AGLIC's Complaint in Interpleader**

This is an action for interpleader pursuant to 28 U.S.C. § 1335 and Federal Rule of Civil Procedure 22 to resolve competing claims to life insurance proceeds.

AGLIC issued John A. James ("the decedent") a life insurance policy in 2008. Defendant Melissa James, the decedent's then-wife, was the primary beneficiary. (Compl. ¶¶ 8-11.) In July 2012, the decedent filed a petition for dissolution of marriage. (M. James Decl., Oct. 23, 2014, ¶ 1.) In January 2013, the decedent reduced his policy benefits to $500,000 from $1,000,000, and in July 2013, the decedent's insurance agent advised AGLIC that he and the decedent were working on a change in beneficiary. (Compl. ¶¶ 11-13.) AGLIC alleges upon information and belief that the decedent never returned a fully-executed change in beneficiary form to the agent, nor did AGLIC ever receive a change in beneficiary form prior to the decedent's death on July 4, 2014. (Compl. ¶¶ 14-18.) Following the decedent's death, Melissa James submitted a claim for the insurance proceeds. (Compl. ¶¶ 21-22.) AGLIC subsequently received a letter from an attorney regarding John James's claim for the life insurance benefits, along with a change in beneficiary form dated July 11, 2013, listing as beneficiaries the decedent's three sons, John James, Coleman James, and C.W.J. (Compl. ¶¶ 21-23.)

On September 16, 2014, AGLIC paid to Melissa James what it describes as her "verifiable community property share" of the decedent's $500,000 life insurance benefit, plus interest, in the sum of $166,675. (Compl. ¶ 25.) AGLIC alleges that this sum is based on "four of six years the policy existed where community property funds were used to pay the premiums." (Compl. ¶ 25.)

Both John James and Melissa James claim entitlement to the life insurance proceeds. (Compl. ¶¶ 28, 29.) AGLIC filed its complaint for interpleader relief pursuant to Federal Rule of Civil Procedure 22 on September 19, 2014, naming as defendants Melissa James, John James, Coleman C. James, and C.W.J. AGLIC seeks a determination of the rights of Defendants as to the remaining death benefits of $333,325 plus interest. (Compl. ¶ 30.)

### B. Defendants' Answer and Counterclaims

On December 2, 2014, Defendants filed their answer to AGLIC's complaint, along with two counterclaims based on the non-interpleaded funds that AGLIC paid to Melissa James prior to filing its complaint. [Docket No. 38 (Counterclaim) ¶¶ 76-103.]

Defendants maintain that they are the rightful policy beneficiaries, given that decedent sent an email to his insurance agent attaching a fully executed change of beneficiary form designating Defendants as the beneficiaries. (Counterclaim ¶¶ 15, 46-47, 55-59, Exs. 5-7.)

Defendants allege that upon receiving AGLIC's letter notifying Defendants that it had paid out $166,675.00 to Melissa James, counsel for Defendants promptly sent an email to AGLIC's counsel informing him of divorce proceedings in which a court had made various orders regarding decedent and Melissa James's community property. (Counterclaim ¶ 69, Ex.10.) As a result of the divorce proceedings and ensuing court order, Defendants allege that the periodic payments for the policy were made by decedent using his separate funds beginning after his separation from Melissa James on July 20, 2012 through the date of his death on July 4, 2014. Therefore, according to Defendants, Melissa James did not have a community interest in the policy or in any benefits. (Counterclaim ¶¶ 48-50.) Defendants assert that AGLIC did not inquire into the divorce proceedings, but nevertheless paid $166,675.00 to Melissa James outside of the interpleader action, without any judicial determination as to the lawful beneficiary and owner of such funds. (Counterclaim ¶ 70, Ex. 11; ¶ 71, Exs. 10-11.)

Defendants further allege that on October 30, 2014 and November 13, 2014, counsel for AGLIC requested that Defendants dismiss AGLIC and release it from liability under the policy, including for the sums already paid to Melissa James, in exchange for AGLIC not seeking attorneys' fees and costs in filing the interpleader action. (Counterclaim ¶ 72, Ex. 12; ¶ 73, Ex. 13; ¶ 74, Ex. 14; ¶ 75, Ex. 15.) Defendants bring two counterclaims against AGLIC: (1) breach of contract, and (2) breach of the duty of good faith and fair dealing. Only the second cause of action is relevant to this

motion.³ Defendants allege that "AGLIC has a duty of good faith and fair dealing in handling the claims and addressing the rights of [Defendants]." (Counterclaim ¶ 89). Defendants assert that AGLIC breached its duty of good faith and fair dealing by paying Melissa James $166,675 of the policy proceeds without first notifying Defendants or properly investigating the court orders in the divorce proceedings, in violation of AGLIC's "express representation to [Defendants] that it was a disinterested stakeholder," and that it would interplead the entirety of the proceeds. (Counterclaim ¶¶ 89-96.) In addition, Defendants allege that AGLIC breached its duty of good faith and fair dealing by improperly seeking release from liability as to the $166,675 paid to Melissa James in exchange for forgoing attorneys' fees and costs associated with the interpleader action. (Counterclaim ¶¶ 100-103.)

**C.     AGLIC's Motion to Strike**

AGLIC now moves the court to strike from Defendants' Counterclaim paragraphs 72, 73, and 100 through 103 in their entirety, as well as exhibits 12 through 15, which contain the settlement communications in which counsel for AGLIC offered to forgo attorneys' fees and costs in the interpleader action in exchange for a dismissal and release from all liability. AGLIC moves to strike the paragraphs and exhibits on the grounds that they are "redundant, immaterial, impertinent, or scandalous matter" within the meaning of Rule 12(f) of the Federal Rules of Civil Procedure, because they constitute or refer to (1) privileged litigation statements under California Civil Code Section 47(b); and (2) inadmissable settlement communications pursuant to Rule 408 of the Federal Rules of Evidence.

Defendants oppose the motion. [Docket No. 50 (Defs.' Opp'n).] On January 30, 2015, the court ordered the parties to provide supplemental briefing regarding the motion to strike, which the parties timely filed. [Docket Nos. 56, 57.]

---

³ In their first cause of action for breach of contract, Defendants allege that the life insurance policy is a binding contractual agreement under which AGLIC must pay proceeds to the rightful beneficiaries. (Counterclaim ¶ 77.) Defendants allege that AGLIC breached its contractual obligations to Defendants by initiating the interpleader suit—thus relinquishing its interests in the policy—and wrongfully paying Melissa James $166,675 of the policy proceeds on September 16, 2014 without first notifying Defendants. (Counterclaim ¶¶ 77-85.)

4

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(f), upon motion or *sua sponte*, a court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) motions should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation. *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001); *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). A decision to strike material from the pleadings is vested to the sound discretion of the trial court. *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000).

The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that will arise from litigating spurious issues by dispensing with those issues prior to trial. *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983) (motions to strike are proper if striking part of a pleading would make trial less complicated or otherwise streamline the ultimate resolution of the action). In contrast, the function of Rule 12(f) is not served when the moving party attempts to strike portions of the nonmoving party's pleading for certain types of relief, or if the motion would require the court to resolve "disputed and substantial factual or legal issues." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-75 (9th Cir. 2010).

When a court considers a motion to strike, "it must view the pleading in a light most favorable to the pleading party." *Oracle Am., Inc. v. Micron Tech., Inc.*, 817 F. Supp. 2d 1128, 1131-32 (N.D. Cal. 2011) (citing *In re 2TheMart.com, Inc. Sec. Lit.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000)). A court must deny the motion to strike if there is any doubt as to whether the allegations in the pleading could be relevant in the action. *Id*.

## III. DISCUSSION

As the moving party, AGLIC is required to set forth the legal standards governing a Rule 12(f) motion to strike and establish that it has satisfied those standards. AGLIC failed to do so. On that basis alone, the court could deny AGLIC's motion. The court will nonetheless proceed with its analysis of both Civil Code section 47(b) and Federal Rule of Evidence 408.

### A.     California Civil Code Section 47(b)

AGLIC first moves to strike the offending portions of Defendants' Counterclaim on the grounds that they constitute privileged litigation statements under California Civil Code section 47(b).

Section 47(b) of the California Civil Code provides in pertinent part that, "[a] privileged publication or broadcast is one made . . .[i]n any . . . judicial proceeding . . . ." Cal. Civ. Code § 47(b).  The privilege has the effect of "immunizing [litigants and witnesses] from liability for torts arising from communications made during judicial proceedings." *Silberg v. Anderson*, 50 Cal. 3d 205, 214 (1990).  California's litigation privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Id*. at 212.  The purposes of requiring courts to enforce an "absolute" litigation privilege are to "ensur[e] free access to the courts, promot[e] complete and truthful testimony, encourag[e] zealous advocacy, giv[e] finality to judgments, and avoid[] unending litigation." *Id*. at 214-15 (citing *McClatchy Newspapers, Inc. v. Superior Court*, 189 Cal. App. 3d 961, 970 (1987)); *see also Holmes v. Elec. Document Processing, Inc*., 966 F. Supp. 2d 925, 936 (N.D. Cal. 2013) (citing cases).

The litigation privilege is "absolute," *Silberg*, 50 Cal. 3d at 215, and extends to any communication, whether or not it amounts to a publication. *Id*. at 212.  Furthermore, the privilege has an "an expansive reach." *Rubin v. Green*, 4 Cal. 4th 1187, 1194 (1993), and "[a]ny doubt as to whether the privilege applies is resolved in favor of applying it." *Comstock v. Aber*, 212 Cal. App. 4th 931, 952 (2012) (citing *Adams v. Superior Court*, 2 Cal. App. 4th 521, 529 (1992)).  California courts have given "judicial proceeding" an expansive definition, and have found that settlement negotiations fit within the section 47(b) privilege. *See, e.g., Torres v. Unum Life Ins. Co. of Am.*, No. C 08-1940 MHP, 2009 WL 69358, at *12 (N.D. Cal. Jan. 9, 2009) (citing *Home Ins. Co. v. Zurich Ins. Co.*, 96 Cal. App. 4th 17, 23 (2002)).

Here, AGLIC argues that the paragraphs and exhibits which are the subject of this motion refer to or constitute privileged negotiations that took place after the interpleader litigation began,

6

1  and thus fall within the scope of California's litigation privilege.  Defendants argue that the privilege
2  does not apply even if the settlement offers were made after the litigation began.  Defendants assert
3  that the offers are admissible to prove that AGLIC breached its duty of good faith and fair dealing in
4  part by improperly seeking a release of liability as to all of the insurance funds, including those paid
5  to Melissa James, in exchange for forgoing attorneys' fees and costs associated with the interpleader
6  action.

7        The California Supreme Court has held that the section 47 litigation privilege does not bar
8  admission of settlement offers made after the commencement of litigation for the purpose of
9  establishing a breach of the covenant of good faith and fair dealing.  *White v. W. Title Ins. Co.*, 40
10 Cal. 3d 870 (1985).  In *White*, the plaintiff insureds sued the defendant insurer for breach of contract
11 and negligence.  *Id*. at 878-89.  During the course of litigation the insurer made low settlement
12 offers.  *Id*. at 879.  The plaintiffs obtained leave to amend the complaint to state a claim for breach
13 of the covenant of good faith and fair dealing, based on the insurer's conduct throughout the
14 litigation, including the settlement offers.  *Id*.  On appeal, the insurer argued that the court erred in
15 admitting evidence of settlement offers occurring after litigation commenced as evidence of its
16 breach, and contended that  its settlement offers were absolutely privileged under Civil Code section
17 47.  *Id*. at 885-88.

18       The *White* court held that the trial court did not err in admitting into evidence the settlement
19 offers, and in so doing, drew "a careful distinction between a cause of action based squarely on a
20 privileged communication, such as an action for defamation, and one *based upon an underlying*
21 *course of conduct* evidenced by the communication."  *Id*. at 887 (emphasis added).  The court
22 reasoned that the plaintiffs did not assert that the insurer's communications themselves were
23 "defamatory, or done with the intent of causing emotional distress," but rather that the
24 communications showed that the "defendant was not evaluating and seeking to resolve their claim
25 fairly and in good faith."  *Id*. at 888.  As such, *White* held that the section 47 litigation privilege does
26 not bar admission of a settlement communication when offered for the purpose of showing an
27 underlying course of conduct such as bad faith, reasoning that "even if liability cannot be founded
28

upon a judicial communication, it can be proved by such a communication[.]" *Id*; *see also Competitive Techs. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1153-54 (N.D. Cal. 2003) (declining to apply Cal. Civ. Code § 47(b), and denying motion to dismiss unfair competition claims when injury alleged was not based on misrepresentations occurring during negotiations themselves, but instead, "the alleged misrepresentations [were] offered as evidence of the underlying course of conduct rather than as the actual source of the harm"); *Microsoft Corp. v. A-Tech Corp*., 855 F. Supp. 308, 314 (C.D. Cal. 1994) (holding Cal. Civ. Code § 47(b) did not bar defendants' counterclaim for unfair business practices where alleged improper statements offered to prove conduct actionable in abuse of process claim). Here, as in *White*, Defendants contend that they will offer the challenged settlement communications to prove a course of conduct, that is, AGLIC's alleged breach of its duty of good faith and fair dealing. (Counterclaim ¶¶ 100-03.)

AGLIC argues in its supplemental briefing that *White*'s holding "has been modified by multiple cases[,]" including by the California Supreme Court in *Silberg*. While *Silberg* provides a lengthy discussion of the policies supporting an absolute and wide-reaching litigation privilege, the court does not address, or otherwise modify *White*'s holding. *See Silberg*, 50 Cal. 3d at 215-16. Moreover, the California Supreme Court has subsequently cited *White* with approval. *See, e.g.*, *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1248 (2007) ("We have drawn a careful distinction between a cause of action based squarely on a privileged communication, such as an action for defamation, and one based upon an underlying course of conduct evidenced by the communication." (citing *White*, 40 Cal. 3d at 888)). Furthermore, courts in this circuit continue to follow *White* on this issue. *See*, *e.g.*, *Competitive Techs.*, 286 F. Supp. 2d at 1153-54; *Microsoft Corp. v. A-Tech Corp*., 855 F. Supp. at 314; *Fid. Nat. Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, No. 09-CV-140-GPC-KSC, 2014 WL 1286392, at *6 (S.D. Cal. Mar. 28, 2014) (holding "*White* controls" on issue of whether Cal. Civ. Code § 47 bars evidence concerning aggressive litigation tactics for purpose of showing insurance company's bad faith conduct, noting "[f]ederal courts also follow the 'careful distinction' set forth in *White* to allow insureds to introduce evidence of the insurer's litigation conduct in bad faith insurance cases." (internal citations

omitted)).

The court concludes that *White* remains good law and applies here. Accordingly, the court denies Plaintiff's motion to strike with respect to application of the litigation privilege.

**B.     Federal Rule of Evidence 408**

Rule 408 provides in relevant part that:

> (a) Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> . . .
>
> (2) conduct or a statement made during compromise negotiations about the claim
>
> . . .
>
> (b) The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408.

As the Ninth Circuit has held, "[t]he text of the rule is clear." *Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007). Evidence of conduct or a statement made during settlement negotiations may not be considered to prove the validity or amount of a disputed claim, but Rule 408 expressly does not bar such evidence when offered for another purpose. *Id*.

In this case, the challenged portions of Defendants' counterclaims are not introduced to "prove the validity or amount of a disputed claim." Rather, as Defendants argue, they are offered for the purpose of providing support for their allegation that AGLIC breached its duty of good faith and fair dealing. *See* Fed. R. Evid. 408 advisory committee's note (stating that "[t]he intent [of the 2006 Amendment] is to retain the extensive case law finding Rule 408 inapplicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim." (citing *Athey v. Farmers Ins. Exchange*, 234 F.3d 357 (8th Cir. 2000))); *see also Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 584 (N.D. Cal. 2008) (holding that the intent of the 2006 amendment to Rule 408 was to retain case law finding the rule inapplicable when compromise evidence is offered for another purpose (citing *Athey,* 234 F.3d 357)).

In *Athey*, the Eighth Circuit held that "[a]lthough evidence of conduct during settlement

negotiations generally is inadmissible [under Rule 408] to prove a party's liability for the underlying claim, it may be admitted "when the evidence is offered for another purpose . . . ." *Athey*, 234 F.3d at 362. The court reasoned that within the Eighth Circuit, courts have held that "an insurer's attempt to condition the settlement of a breach of contract claim on the release of a bad faith claim may be used as evidence of bad faith." *Id*. (citing cases). Therefore, the court ruled that evidence of conduct during a settlement conference was not inadmissable under Rule 408, because it was "offered for another purpose." *Id*. (internal quotation marks omitted).

Although AGLIC cites *Clemco Industries v. Commercial Union Insurance Co.*, 665 F. Supp. 816, 829 (N.D. Cal. 1987), for its proposition that *any* evidence concerning settlement negotiations from one party to another is inadmissable, there is no generalized "settlement privilege" under Rule 408. *See Phoenix Solutions Inc.*, 254 F.R.D. at 584 (explaining the Advisory Committee Notes to Rule 408 further state that "evidence, such as documents, is not rendered inadmissible merely because it is presented in the course of compromise negotiations . . . .").

The court finds that the settlement communications contained within the challenged portions of the Counterclaim are not offered to prove the validity or amount of a disputed claim, but rather for another purpose, namely, as evidence of AGLIC's course of conduct. Therefore, those communications do not fall within the ambit of Rule 408, and are not subject to a motion to strike.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion to strike is DENIED.

IT IS SO ORDERED.

Dated: February 19, 2015



_____
DONNA M. RYU
United States Magistrate Judge

10