United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMERICAN GENERAL LIFE INSURANCE COMPANY,

Plaintiff,

v.

MELISSA JAMES, et al.,

Defendants.

Case No. 14-cv-04242-DMR

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 71, 72

American General Life Insurance Company ("AGLIC") filed this action in interpleader pursuant to 28 U.S.C. § 1335 and Federal Rule of Civil Procedure 22 to resolve competing claims to life insurance proceeds that became payable upon the death of John Albert James ("Mr. James") in July 2014. Defendant Melissa James ("Ms. James"), Mr. James's ex-wife, was named as beneficiary on AGLIC's records at the time of Mr. James's death. Mr. and Ms. James's three sons, Defendants John James, II ("Jack"), Coleman James, and Chad James (collectively, the "James Brothers"), contend that they are the rightful beneficiaries of the policy. Now before the court are cross motions for summary judgment filed by Ms. James and the James Brothers. [Docket Nos. 71, 72.] The court held a hearing on October 8, 2015. For the following reasons, the court grants Ms. James's motion and denies the James Brothers' motion.

## I. BACKGROUND

The material facts of this case are not in dispute. John James and Melissa James married in February 1993 and had three children: John James, II, born in 1994; Coleman James, born in 1995; and Chad James, born in 1996. On September 6, 2008, AGLIC issued a $1,000,000 30-year term life insurance policy to Mr. James (the "AGLIC policy"). Ms. James was named as the

primary beneficiary and the James Brothers were designated as contingent beneficiaries.[1]

On July 20, 2012, the Jameses separated and Mr. James initiated dissolution proceedings in the Superior Court of California for the County of Sonoma. Printed on the Family Law Summons for the dissolution proceedings was a list of "Standard Family Law Restraining Orders," which provided that "[s]tarting immediately," both spouses or domestic partners "are restrained from . . . cashing, borrowing against, canceling, transferring, disposing of, or changing the beneficiaries of any insurance or other coverage, including life, . . . held for the benefit of the parties and their minor child or children." A notice on the first page of the Summons stated that "[t]he restraining orders on page 2 are effective against both spouses or domestic partners until the petition is dismissed, a judgment is entered, or the court makes further orders."

On October 24, 2012, the Jameses executed a "Stipulation and Order Re: Custody, Child and Temporary Spousal Support and Property" ("the October 2012 court order").[2] The October 2012 court order recited the couple's agreements regarding numerous issues, including custody of the three children, spousal support and employment, child support, and the community interest in certain property. It also contained the following statement regarding life insurance:

> 21. LIFE INSURANCE: The parties agree and acknowledge that they own 2 term life insurance policies. MOTHER and FATHER agree that the children of the parties should be the ultimate beneficiaries of these policies. Both parties may determine independently of one another who should administer the life insurance proceeds upon their death for the benefit of the children.

On January 9, 2013, the Jameses executed a second "Stipulation and Order Re: Custody, Child and Temporary Spousal Support and Property," ("the January 2013 court order,") which again recited the couple's agreements about several issues. The January 2013 court order contained the following statement about the life insurance policies:

[1] As contingent beneficiaries, Jack James was to receive a 34% share of the life insurance benefits, with Coleman James and Chad James to each receive a 33% share.

[2] The court calls it the October 2012 court order for ease of reference. To be precise, the Sonoma County Superior Court did not approve and enter the October 2012 Stipulation and the January 2013 Stipulation (discussed below) until January 2013. The stipulations were thus entered as court orders prior to Mr. James's July 2014 death.

United States District Court
Northern District of California

> 18. LIFE INSURANCE: The parties agree and acknowledge that they own 2 term life insurance policies. MOTHER and FATHER agree that the children of the parties should be the ultimate beneficiaries of these policies. Both parties may determine independently of one another who should administer the life insurance proceeds upon their death for the benefit of the children. Both parties further agree that they may decrease coverage to no less than $500,000 per policy. Both parties agree to add terms to the policies indicating that any outstanding reimbursement claims stemming from this dissolution action shall be paid forthwith from the proceeds of said policies without further court action. Both parties agree that any one-half (1/2) of any outstanding community debts unpaid at the death of either party shall be paid forthwith from the proceeds of said policies without further court action.

In February 2013, Mr. James decreased the coverage of the AGLIC policy to $500,000.

Mr. James subsequently contacted his insurance agent, Timothy Chanter, to change the beneficiary of his AGLIC policy. The AGLIC policy contains two provisions governing changes of beneficiary. First, the "Owner" provision states:

> The Owner is shown in the application unless changed. The Owner has all rights under this Policy while the Insured is alive. These rights are subject to the consent of any living irrevocable beneficiary.

In this case, Mr. James was both the owner and the insured. The policy also provided that the owner could change the beneficiary by written notice as follows:

> While this Policy is in force the Owner may change the beneficiary or ownership by Written notice to [AGLIC]. When We record the change, it will take effect as of the date the Owner signed the notice, subject to any payment We make or other action We take before recording.

The AGLIC policy's termination provision states that the policy terminates "on the earliest" of four conditions, including "[t]he death of the Insured."

On July 11, 2013, Chanter emailed Mr. James a beneficiary change form, asking him to sign, date, and email it back to Chanter. Mr. James executed the beneficiary change form, naming the James Brothers as primary beneficiaries of the AGLIC policy with equal shares, and replacing Ms. James as beneficiary. He also named Jack James as trustee for the minor children. He emailed the completed beneficiary change form to Chanter that same day, 40 minutes after Chanter had sent him the form. Although Chanter received the form, it was "somehow erased"

from his computer and he failed to forward it to AGLIC.[3] Mr. James died suddenly on July 4, 2014. AGLIC did not receive the July 2013 beneficiary change form prior to his death.

Following Mr. James's death, on July 14, 2014, Ms. James submitted a claim to AGLIC for the life insurance benefits as the named beneficiary. On July 21, 2014, Jack James submitted his own claim to AGLIC as beneficiary along with a copy of the July 11, 2013 beneficiary change form. In September 2014, AGLIC paid Ms. James $166,675 plus interest, which it believed to be her "verifiable community property share" of the $500,000 death benefit.

Ms. James informed the Sonoma County Superior Court of Mr. James's death at a July 18, 2014 hearing. On September 9, 2014, the court entered judgment of dissolution and terminated the Jameses' marital status, with the issue of the date of dissolution to be determined on motion of either party or on stipulation.

On September 19, 2014, AGLIC filed a complaint in interpleader in this court pursuant to Federal Rule of Civil Procedure 22, naming Ms. James and the James Brothers as defendants. AGLIC sought interpleader relief as to the remaining death benefit payable under the AGLIC policy, and asked the court to determine and declare the rights of each of the defendants to the remaining death benefits of $333,325.00, plus accrued interest. On September 23, 2014, the court granted AGLIC leave to deposit the sum of $333,325, plus accrued interest, with the court.

The James Brothers filed a counterclaim against AGLIC for breach of contract and breach of the duty of good faith and fair dealing based upon AGLIC's payment to Ms. James of $166,675 plus interest. AGLIC then filed a cross-complaint against Ms. James for equitable indemnity, apportionment and contribution, and constructive trust as to the $166,675 payment. On April 28, 2015, the court granted the parties' stipulation and entered an order dismissing AGLIC from the action, and dismissing the James Brothers' counterclaim against AGLIC and AGLIC's cross-claim against Ms. James, with each party to bear their own attorneys' fees, costs, and expenses against AGLIC.

Ms. James and the James Brothers now each move for summary judgment. The James

---

[3] Mr. James's July 11, 2013 email with the beneficiary change form attached was eventually located on Chanter's computer in January 2015.

Brothers contend that they are the designated beneficiaries of Mr. James's life insurance policy and are entitled to the full $500,000 benefit, minus an offset of $88,930 to Ms. James to pay one half of the outstanding community debts unpaid at Mr. James's death. Ms. James asserts that she is the named beneficiary under the terms of the policy. In the alternative, she seeks partial summary judgment on the issue of her community property interest in the policy, which she claims is at least $20,825 more than AGLIC paid her. She also seeks partial summary judgment as to the James Brothers' claim to the $166,675 AGLIC paid to her, on the grounds that the court cannot adjudicate the disposition of those funds.

## II. LEGAL STANDARD

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could return a verdict in that party's favor. *Id*. at 248. The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *See id*. at 249.

To defeat summary judgment once the moving part has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists. *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims, *Anderson*, 477 U.S. at 252; conclusory assertions will not suffice. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" when ruling on the motion. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Where, as here, the parties have filed cross-motions for summary judgment, "[e]ach motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

## III. DISCUSSION

The moving parties each argue that they are the rightful beneficiaries of Mr. James's AGLIC policy and are thus entitled to the life insurance proceeds. Ms. James contends that she is entitled to the full amount of the life insurance proceeds as she is the named beneficiary under the AGLIC policy. She asserts that the standard family law restraining orders that were in place throughout the dissolution proceedings prevented Mr. James from changing the beneficiary on his life insurance prior to his death. She argues in addition that Mr. James's July 2013 attempt to replace her as the beneficiary did not comply with the terms of the policy and was thus ineffective.

The James Brothers contend that they were designated as the beneficiaries of the AGLIC policy three separate times before their father's death: by way of (1) the October 2012 court order, (2) the January 2013 court order, and (3) the July 2013 beneficiary change form. According to the James Brothers, the October 2012 and January 2013 court orders contained provisions with beneficiary changes to both Mr. and Ms. James's individual policies, and also constituted "further orders" of the court which had the statutory effect of lifting the family law restraining orders that prevented beneficiary changes. As to the July 2013 beneficiary change form, the James Brothers argue that Jack James's submission of the change form after Mr. James's death complied with the formal requirements of the policy. In the alternative, the James Brothers assert that California law recognizes an exception to the rule of strict compliance to change an insurance beneficiary, and the change form substantially complied with the terms of the policy. Finally, the James Brothers argue that Ms. James relinquished any expectancy interest she had in the AGLIC policy through both the October 2012 and January 2013 court orders.

Since the application of the family law restraining order may be dispositive as to the validity of any attempt by Mr. James to change his life insurance beneficiary prior to his death, the

court will first examine whether the divorcing couple was restrained from changing their life insurance beneficiaries, and if so, the duration of that restraint.

**A. Whether the California Family Code section 2040 Restraining Order Prohibited Mr. James from Changing the Beneficiary**

California Family Code section 2040 subjects all parties in marital dissolution proceedings to certain automatic temporary restraining orders, including an order "[r]estraining both parties from cashing, borrowing against, canceling, transferring, disposing of, or changing the beneficiaries of any insurance or other coverage, including life . . . , held for the benefit of the parties and their child or children for whom support may be ordered." Cal. Fam. Code § 2040(a)(3). The order takes effect upon the "filing [of] the petition and issuance of the summons and upon personal service of the petition and summons on the respondent," and remains in effect "against the parties until the final judgment is entered or the petition is dismissed, or until further order of the court." Cal. Fam. Code § 233(a).

The parties do not dispute that the family law restraining order was in place as of the initiation of the Jameses' dissolution proceedings. Although the parties did not establish the exact date that the petition and summons were served on Ms. James, they agreed at the hearing that the restraining order was in effect by the fall of 2012. The parties also do not dispute that the restraining order operated to preclude any change in the beneficiaries of the Jameses' life insurance policies. Since the James Brothers argue that three beneficiary changes took place during the pendency of the dissolution proceedings, the court must determine whether the restraining order was lifted at any time by "further order of the court" pursuant to section 233(a), such that any of the purported beneficiary changes were valid.[4]

The October 2012 and January 2013 court orders contained identical statements about the couple's life insurance policies:

> LIFE INSURANCE: The parties agree and acknowledge that they own 2 term life insurance policies. *MOTHER and FATHER agree that the children of the parties should be the ultimate beneficiaries*

[4] Per section 233(a), the restraining order could also be lifted upon the final judgment of dissolution which took place in September 2014, but this is irrelevant since September 2014 is beyond the date of any purported beneficiary change.

> *of these policies.* Both parties may determine independently of one another who should administer the life insurance proceeds upon their death for the benefit of the children.

The January 2013 court order contained the following three additional sentences:

> Both parties further agree that they may decrease coverage to no less than $500,000 per policy. Both parties agree to add terms to the policies indicating that any outstanding reimbursement claims stemming from this dissolution action shall be paid forthwith from the proceeds of said policies without further court action. Both parties agree that any one-half (1/2) of any outstanding community debts unpaid at the death of either party shall be paid forthwith from the proceeds of said policies without further court action.

The parties dispute the meaning and effect of the statements in these court orders. According to the James Brothers, the phrase "MOTHER and FATHER agree that the children of the parties should be the ultimate beneficiaries of [the life insurance] policies" unambiguously vests the James Brothers with beneficiary status. They further assert that these court orders constitute "further order[s] of the court" within the meaning of Family Code § 233(a) that had the effect of lifting the restraining order that precluded a change of beneficiary.

Ms. James argues that the phrase "ultimate beneficiaries of these policies" cannot be construed as effecting an immediate change of beneficiary on the life insurance policies. According to Ms. James, the stipulations did not relieve either divorcing party of the restrictions of the restraining order, and did not permit the parties to change the named beneficiary on the policies.

"Contract interpretation is a matter of law and 'solely a judicial function, unless the interpretation turns on the credibility of extrinsic evidence.'" *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1175 (C.D. Cal. 2009) (quoting *Superior Dispatch, Inc. v. Ins. Corp. of New York*, 176 Cal. App. 4th 12, 31 (2009)).[5] Under California law,

---

[5] Where the meaning of the words in a contract is disputed, the court conducts a three-step process. "First, it provisionally receives any proffered extrinsic evidence that is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1126-27 (2008) (citations omitted). If the court concludes that the words in a contract are reasonably susceptible to more than one interpretation, it admits extrinsic evidence to interpret those words. *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 39 (1968). "When there is no material conflict in the extrinsic evidence, the court interprets the contract as a matter of law. This is true even when conflicting inferences may be drawn from the undisputed extrinsic evidence or that extrinsic

a contract is to be interpreted so as "to give effect to the mutual intention of the parties as it existed at the time of contracting." Cal. Civ. Code § 1636; *Am. Alternative Ins. Corp. v. Superior Court*, 135 Cal. App. 4th 1239, 1245 (2006) ("The mutual intention of the contracting parties at the time the contract was formed governs."). "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible," subject to other provisions governing interpretation. Cal. Civ. Code § 1639. In order to ascertain the intention of the parties, the language of a contract governs its interpretation, "if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638. "The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." Cal. Civ. Code § 1644.

"A contract term will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Westport Ins. Corp. v. N. Cal. Relief*, 76 F. Supp. 3d 869, 879 (N.D. Cal. 2014). Whether language in a contract is ambiguous is a question of law to be determined by the court. *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 912 (1986); *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 871 (9th Cir. 1979).

This is not a breach of contract case. The court is not tasked with interpreting exactly what the divorcing couple intended to accomplish through their stipulations in the October 2012 and January 2013 court orders. This case requires a narrower analysis. The court must determine whether the stipulations reasonably can be interpreted in the manner urged by the James Brothers—that is, as an agreement to immediately name the James Brothers as the beneficiaries of the life insurance policies. If the James Brothers cannot establish that this is a reasonable interpretation, then they cannot prevail in their argument that they are the current beneficiaries who are entitled to receive the interpleaded insurance proceeds.

---

evidence renders the contract terms susceptible to more than one reasonable interpretation." *Wolf*, 162 Cal. App. 4th at 1126 (citations omitted). Any factual conflict in the extrinsic evidence must be resolved by a jury. *Id*.

Here, the October 2012 and January 2013 court orders contain the Jameses' agreement that their children "should be the ultimate beneficiaries" of the life insurance policies. According to the James Brothers, this statement had the effect of unambiguously and immediately changing the designated beneficiaries of both life insurance policies and vesting the children with beneficiary status. However, this interpretation is inconsistent with the use of the word "ultimate" to modify "beneficiaries." The Merriam-Webster Online Dictionary includes the following definitions of "ultimate": "happening or coming at the end of a process, series of events, etc."; "most remote in space or time: farthest"; and "last in a progression or series." http://www.merriam-webster.com/dictionary/ultimate. The common dictionary definition of "ultimate" connotes something that will eventually happen at a remote time. This is contrary to the James Brothers' contention that the provisions reflect their parents' written agreement to immediately name their sons as beneficiaries to their life insurance policies. Had the parents wished to immediately designate their sons, they could have simply stated that their children "are now" the beneficiaries of their insurance policies.

At the hearing, the James Brothers admitted that the use of the phrase "ultimate beneficiaries" is "awkward," but argued that their interpretation is bolstered by the third sentence of both the October 2012 and January 2013 court orders: that "[b]oth parties may determine independently of one another who should administer the life insurance proceeds upon their death for the benefit of the children." According to the James Brothers, the statement that "the children . . . should be the ultimate beneficiaries" of the policies makes it clear that any third party chosen by a parent to "administer the life insurance proceeds" may not use the proceeds for him or herself, but instead must use the proceeds for the benefit of the James Brothers. The court finds that the third sentence does not breathe life into the James Brothers' interpretation, for it does not lend immediacy to the phrase "ultimate beneficiaries." In fact, the third sentence could be read to support Ms. James's position. According to Ms. James, the phrase "ultimate beneficiaries" means that the children would receive the insurance proceeds after the death of both parents, not just one of them, and the third sentence could reasonably be interpreted to mean that the surviving spouse could independently designate an individual to administer the funds for the benefit of the children

after the surviving spouse's death.

The court concludes as a matter of law that the relevant language in the October 2012 and January 2013 court orders is not reasonably capable of the construction offered by the James Brothers.[6] The statement that "the children . . . should be the ultimate beneficiaries" did not immediately designate the James Brothers as the beneficiaries of their life insurance policies. Under California contract law, these words must be understood in their ordinary and popular sense, since there is no indication in the stipulations that Mr. or Ms. James intended to use the term "ultimate" in any technical or special sense. *See* Cal. Civ. Code § 1644. The ordinary meaning of the word "ultimate" is that it is something that will happen in the future, at the end of a process. Moreover, the divorcing couple's use of the words "*should be* the ultimate beneficiaries" implies an expectation that each party will eventually designate the James Brothers as beneficiaries; it does not impose an immediate condition or obligation. Accordingly, by its plain terms, the statement that the James Brothers "should be the ultimate beneficiaries" cannot be interpreted as an immediate designation of the couple's sons as the beneficiaries of the life insurance policies. Therefore, Ms. James remains the proper beneficiary of the AGLIC policy.

Since the October 2012 and January 2013 court orders did not designate the couple's sons as the beneficiaries, and the James Brothers do not identify any other orders modifying or revoking the standard family law restraining order, the restraining order was in effect until the final judgment of dissolution was entered in September 2014. *See* Cal. Fam Code § 233(a). Mr. James was required to obtain relief from the restraining order if he sought to achieve a result

---

[6] Since the court determines that the James Brothers have not proffered a reasonable construction of the disputed language, it need not reach Ms. James's argument that the phrase "ultimate beneficiaries" means that the children would receive the insurance proceeds after the death of both parents, not just one of them. According to Ms. James, the divorcing couple executed the provisions in the October 2012 and January 2013 court orders as interim measures early in the dissolution proceedings in order to maintain the status quo until they made final decisions regarding the division of assets and long-term spousal support. She asserts that they executed these stipulations so that if one spouse died during the proceedings, the surviving spouse would be entitled to use the insurance proceeds for any outstanding reimbursement claims stemming from the dissolution, and to pay one half of any outstanding community debts (in accordance with the January 2013 court order), before using the residue to benefit their children. Per Ms. James, the divorcing couple specified that their children "should be the ultimate beneficiaries" in order to protect against the possibility that the policy proceeds would be left for a new romantic partner or other third party. (*See* M. James Decl., Aug. 20, 2015, ¶¶ 6, 7.)

//

//

contrary to its terms. Because he did not obtain such relief, he was legally prohibited by section 2040 from changing the beneficiaries to his AGLIC policy until after dissolution. Accordingly, the July 2013 beneficiary change form executed by Mr. James had no legal effect. *See, e.g.*, *Allstate Life Ins. Co. v. Dall*, No. 2:07-cv-2264-GEB-KJM, 2009 WL 3627405, at *3 (E.D. Cal. Oct. 28, 2009) (holding that life insurance beneficiary change form executed during dissolution proceedings while section 2040 restraining order was in place "had no legal effect").

**B. Whether Ms. James Relinquished Her Expectancy Interest in the AGLIC Policy**

The James Brothers argue in the alternative that Ms. James relinquished any expectancy interest she had in the AGLIC policy, citing *Life Insurance Co. of North America v. Cassidy*, 35 Cal. 3d 599 (1984).

In *Cassidy*, the appellant was the named beneficiary of an accidental death policy insuring her former husband's life. After the husband's death, the appellant sought a judicial determination that she was entitled to benefits payable under the policy. *Id.* at 602. The court considered whether the written life insurance beneficiary designation remained effective to transfer the policy benefits to the former wife despite an intervening divorce and marital settlement agreement. Analyzing the former spouses' marital settlement agreement, the court concluded that the agreement clearly showed "an intent by the Cassidys to waive expectancies which may have existed at the time of the settlement." *Id.* at 605. Further, the court concluded that the insured had not intended to make a gift of the policy proceeds to his former wife, considering evidence "which negated any inference of donative intent" on the former husband's part and documentary evidence that the former husband had effected changes of beneficiary with regard to other life insurance policies. *Id.* at 609-10.

The James Brothers cite *Cassidy* for the proposition that the expectancy interest in a life insurance policy conferred on the named beneficiary of the policy can be terminated through agreement of the spouses if it "clearly appears that the agreement was intended to deprive either

//

//

spouse of such a right." *Id.* at 605-06. Although they do not set forth the exact language that they contend constitutes a relinquishment of Ms. James's expectancy interest, the James Brothers generally argue that the terms of the October 2012 and January 2013 court orders "more than meet the clarity required under California law to terminate Ms. James' expectancy interest as beneficiary." (James Brothers' Mot. at 11.)

The court disagrees. "A property settlement covering all property and releasing all claims may be found to include a life insurance expectancy interest, 'but where the language is not broad enough to encompass such an expectancy . . . the [spouse] may still take as beneficiary if the policy so provides.'" *Life Ins. Co. of N. Am. v. Ortiz*, 535 F.3d 990, 993 (9th Cir. 2008) (quoting *Thorp v. Randazzo*, 41 Cal. 2d 770, 774 (1953) (second alteration in original). The James Brothers fail to specifically identify the language by which Ms. James purportedly renounced her claim to the AGLIC policy proceeds. *Compare Cassidy*, 35 Cal. 3d at 604 (analyzing several provisions of marital settlement agreement, including provision that "[e]ach of the parties hereby relinquishes and waives . . . the right to receive in any manner any property of the other upon the death of the other . . ." (emphasis removed)). Moreover, as discussed above, the Jameses' statement that their sons "should be the ultimate beneficiaries" of the couple's life insurance policy was not an immediate designation of the James Brothers as the beneficiaries of the life insurance policies, but instead was a reference to an event that "should" happen at some unspecified time in the future. In the absence of a clear statement of intent by the Jameses to waive their expectancies in the life insurance policies, the court finds that Ms. James did not relinquish her interest in Mr. James's AGLIC policy.

## IV. CONCLUSION

For the foregoing reasons, Melissa James's motion for summary judgment is GRANTED. The James Brothers' motion for summary judgment is DENIED. Ms. James is directed to submit a proposed judgment and order addressing the disbursement of the interpleaded funds held by the Clerk of the Court within two weeks of this order.

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: December 23, 2015




Donna M. Ryu
United States Magistrate Judge